UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Judge Joan B. Gottschall ) |
| PASZKO MASONRY, INC., CHICAGO MASONRY CONSTRUCTION, INC., PRINCE CONTRACTORS, INC., 4929 FOREST, LLC, and ROBERT RYBALTOWSKI, | ) No. 09 C 7452 ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Atlantic Casualty Insurance Co. ("Atlantic") and Defendants Prince Contractors, Inc. ("Prince") and 4292 Forest, LLC ("Forest") have filed cross-motions for summary judgment; defendants Chicago Masonry Construction Inc. ("Chicago Masonry") and Robert Rybaltowski have also moved to join their co-defendants' motion.[1] For the reasons set forth below, the court denies the defendants' motion and grants Atlantic's motion.

### **I. BACKGROUND**

The following facts are undisputed. In 2007, Prince and Forest—acting as general contractor and developer, respectively—were constructing residential units at 4929 Forest Avenue in Downers Grove, Illinois (hereinafter "the Project"). On September 21, 2007,

---

[1] Rybaltowski's motion to join was previously granted, and to the extent that it was not clear that Chicago Masonry's motion to join also was granted, the court now makes that clear.

Peter Koshiba picked up Robert Rybaltowski in the morning to drive to the Project. Rybaltowski was employed with Raincoat Solutions, a waterproofing business owned by Koshiba. Koshiba had submitted a bid to perform caulking work at the Project to Michael Prince, but Koshiba understood that he needed to have the caulk color and the quality of his work approved before he had the job. Koshiba had prepared a contract, but that contract had yet to be executed. Koshiba testified that he and Rybaltowski were at the Project to do a "mockup" job. If his mockup work was not approved, Koshiba understood that he would not be coming back to the Project. Koshiba did not expect to be paid for preparing or submitting his bid, nor did he expect to be paid for preparing the mockups, although Koshiba would pay Rybaltowski for his work on the Project.

Koshiba and Rybaltowski arrived at the Project at around 8:00 a.m. They took some tools and supplies and started doing mockup work. Koshiba testified that after they finished creating mockups with different caulk colors, they went to look for Michael Prince to get his approval. Before they could find him, Rybaltowski was injured when Paszko Masonry, Inc. ("Paszko")[2]—a contractor doing masonry work at the Project— allegedly caused a silo or a support to fall and hit Rybaltowski. Rybaltowski left the Project due to his injuries, and it was not until thirty or forty minutes after Rybaltowski left that the contract between Raincoat Solutions and Prince was executed.

Rybaltowski filed Case No. 09 L 4011 in the Law Division of the Circuit Court of Cook County (the "Rybaltowski Lawsuit"). In the Rybaltowski Lawsuit, Rybaltowski alleged that on September 21, 2007, he was employed by "a contractor named Peter Koshiba," and that while he was acting within the scope of his employment, he was

---

[2] This court entered a default judgment against defendant Paszko (sometimes spelled "Paskko") in February 2010.

injured when Paszko caused a support to fall off of certain masonry equipment, causing Rybaltowski to suffer a closed head injury. Rybaltowski brought two negligence counts against Prince, Forest, and Chicago Masonry. He alleged that these three defendants were in control of the Project, that they each had a duty to exercise ordinary and reasonable care "for the benefit of the employees of subcontractors and the supervision of those individuals, including [Rybaltowski]," and that they breached that duty in various respects, including by failing to require Paszko to secure the area where it was lifting equipment. Rybaltowski also brought one count against Paszko, alleging that Paszko employees used the crane or hoist negligently and proximately caused Rybaltowski's injuries. Chicago Masonry in turn filed a counterclaim against Paszko, arguing that it was entitled to contribution and that Paszko had breached its contract with Chicago Masonry.

Paszko had a policy of liability insurance with Atlantic, Policy No. L11300129, which was effective from August 5, 2007 to August 5, 2008 ("the Policy"). Paszko did not tender its defense in the Rybaltowski Lawsuit to Atlantic, but Chicago Masonry, Prince and Forest did. (*See* Am. Compl. ¶¶ 16-17.) Chicago Masonry, Prince and Forest each claimed that they qualified as "insureds" under the terms of the Policy. Atlantic protested, arguing that they were not insureds and that in any event, no coverage was owed because Rybaltowski either was a contractor or an employee and the Policy excluded coverage for bodily injuries to such people. Atlantic filed the instant lawsuit, seeking a declaratory judgment that it has no duty to defend Paszko, Chicago Masonry, Prince or Forest in connection with the Rybaltowski Lawsuit.

The relevant terms of the Policy are as follows.

**Section I – Coverages**
**Coverage A Bodily Injury and Property Damage Liability**
1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

\*\*\*

**Section V – Definitions[3]**

\*\*\*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**Exclusion of Injury to Employees, Contractors, and Employees of Contractors**

Exclusion e. Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

(i) "bodily injury" to any "employee" of any insured arising out of or in the course of:
    (a) Employment by any insured; or
    (b) Performing duties related to the conduct of any insured's business;

(ii) "bodily injury" to any "contractor" arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such "contractor" for which any insured may become liable in any capacity . . .

\*\*\*

As used in this endorsement, "**contractor**" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entitles mentioned herein.

All other terms and conditions remain unchanged.

(*See* Exs. to Compl., ECF Nos. 1-3 to 1-7.)

---

[3] Both sides reference this portion of the agreement as being in Section II, but it appears to be from Section V. (*See* ECF No. 1-6.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, the court will grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). With cross-motions for summary judgment, the court treats each motion separately in determining whether judgment should be entered pursuant to Rule 56. *See Marcatante v. City of Chi., Ill.*, 657 F.3d 433, 439 (7th Cir. 2011). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Keri*, 458 F.3d at 628 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Doubts about the existence of a material fact "should be resolved in favor of the nonmoving party and summary judgment ought to be denied." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

## III. ANALYSIS

As noted, the parties have filed cross-motions for summary judgment. Although in its amended complaint Atlantic asked this court to declare that Prince, Chicago

Masonry and Forest are not additional insureds or that Rybaltowski was an "employee" under the Policy, the parties have not raised arguments relevant to those issues in their summary judgment briefing; therefore the court expresses no opinion on them. Instead, the parties focus upon the meaning of the term "contractor." Atlantic's argument is that Rybaltowski was a contractor at the Project, that his bodily injury is not covered under the Policy, and that therefore Atlantic has no duty to defend or indemnify on behalf of any insured. Atlantic urges this court to follow *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 607 N.E.2d 1204 (Ill. 1992), and look only to the allegations in the underlying complaint to determine whether Atlantic has a duty to defend.[4] *See id.* at 1212 ("To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy."). Since the complaint in the Rybaltowski Lawsuit described Raincoat Solutions as a contractor and referenced Rybaltowski as being an employee of a subcontractor, Atlantic claims that the inquiry is at an end. Moreover, even if this court looks beyond the allegations of that complaint, Atlantic states that Rybaltowski qualifies as a contractor because he was "working for and providing services and or materials" for one or more of the entities identified in the definition of "contractor," including Prince. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 7.) Atlantic emphasizes that there is nothing to support the defendants' notion that a person is not a "contractor" unless that person has an executed written contract.

The defendants respond that Atlantic has overlooked the Illinois Supreme Court's recent pronouncement in *Pekin Insurance Co. v. Wilson*, 930 N.E.2d 1011, 1019 (Ill.

---

[4] The parties agree that Illinois law governs the construction of the Policy. While the defendants expressly state that this is the case, (*see* Defs.' L.R. 56.1 Mem. in Supp. of Mot. for Summ. J. at 7 n.1), Atlantic simply cites and seeks to apply relevant Illinois caselaw.

2010), where the court clarified that "a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." According to the defendants, Atlantic improperly failed to support its motion for summary judgment with any of the discovery taken in this case; if this court considers that evidence, the defendants believe that the court must conclude that Rybaltowski was not acting as a contractor because Raincoat Solutions was not yet a contractor. The defendants point to the fact that Raincoat Solutions did not have an executed contract at the time of Rybaltowski's injury; Koshiba's understanding that he would have to leave the Project if he did not perform the mockups in a satisfactory manner; and Koshiba's understanding that he would not be paid for preparing or submitting the bid or doing the mockup work. The defendants argue that if the court adopts Atlantic's position, any coverage under the Policy becomes illusory.

The defendants also seek to rely in part on the testimony of various individuals, including Myrissa Dixon (a litigation claims examiner with American Claims Service, which handles all claims for Atlantic), Donna Lowery (an Atlantic underwriter in 2006), and Peter Golucki (the owner of the insurance agency that procured the Policy on behalf of Paszko). The consensus from these individuals seems to be that none of them are experts, and none of them are clear as to whether Raincoat Solutions would qualify as a "contractor" as defined in the Exclusion. The defendants ask this court to either rule as a matter of law that the Exclusion does not apply, or that the Exclusion is ambiguous such that the Policy should be interpreted against Atlantic. At the very least, they believe a genuine issue of material fact exists as to whether Rybaltowski is a contractor.

**A. The Scope of the Inquiry**

The court first addresses whether it is appropriate to look beyond the underlying complaint in the Rybaltowski Lawsuit to determine whether Atlantic may have a duty to defend. In *Pekin Insurance Co. v. Wilson*, 930 N.E.2d 1011 (Ill. 2010), the plaintiff argued that the Illinois Supreme Court's precedent established that trial courts could look only to the underlying complaint to determine whether there was a duty to defend. The court soundly rejected the notion that it had intended such a limited interpretation. *Id.* at 1017-19. The court instead clarified that "a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Id.* at 1019. Notably, the court discussed with approval two cases, *American Economy Insurance Co. v. Holabird & Root*, 886 N.E.2d 1166 (2008), and *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 461 N.E.2d 471 (1983), both of which involved summary judgment proceedings and both of which recognized that "other evidence" should be considered where appropriate. *Id.* at 1020. The Illinois Supreme Court also agreed that the trial court should not look at additional evidence where it might determine an issue critical to the underlying state court action. In other words, "[o]nce a declaratory judgment action has been filed . . . the court may look beyond the underlying complaint to determine whether the duty to defend was implicated *as long as* the evidence does not go to an ultimate fact in the underlying case." *Zurich Specialties London Ltd. v. Vill. of Bellwood*, *Ill.*, No. 07 CV 2171, 2011 WL 248444, at *12 (N.D. Ill. Jan. 26, 2011) (emphasis added).

Citing *American Economy Insurance Co. v. DePaul University*, 890 N.E.2d 582, 589-90 (Ill. App. Ct. 2008), Atlantic argues that it is inappropriate for the court to

8

consider Koshiba's testimony, both because that testimony is supplied by the defendants, and because to do so would require the court to make a determination that would be crucial to the issue of liability in the underlying case. The court sees no basis for ignoring testimony simply based on the fact that the defendants are the ones that cited it. *See Pekin Ins. Co.*, 930 N.E.2d at 1022 (citing with approval the appellate court decision, wherein the appellate court stated that "if an insurance company has a right to present evidence beyond the complaint in the underlying lawsuit to show that it has *no* duty to defend, the insured has the same right to present evidence to show that there *is* a duty to defend"). The court will consider Koshiba's testimony, as that testimony is directly relevant to Raincoat Solutions' status at the Project and Atlantic has not disputed the accuracy of the facts described therein. In addition, Koshiba's testimony is in the same vein as other pleadings that have been considered by courts in determining an insurer's duty to defend: just as a third party contract is relevant, so too is it relevant (although perhaps not dispositive) to understand whether a contract existed in the first instance.

As to Atlantic's second point, the court fails to understand how a determination of whether or not Rybaltowski was considered a "contractor" is critical to the underlying issues in the Rybaltowski Lawsuit. Atlantic argues that this court might rule "that Prince had no duties, including supervision of Raincoat and its employees," which would be central to liability. (Pl.'s Reply in Resp. to Mot. for Summ. J. at 7.) But this court need say nothing about whether any of the defendants (or Raincoat Solutions, for that matter) owe a duty to Rybaltowski. The issue of whether Rybaltowski falls within the Policy's use of the term "contractor" does not determine whether or not any duty is owed to him. It is only relevant to the question of whether Atlantic agreed to defend such a lawsuit.

Either way, Rybaltowski may establish in the state court that one or more of the defendants negligently caused his injuries, and if he does, he is entitled to his damages. The only issue to be determined by this court is who will defend the Rybaltowski Lawsuit and who will pay any resulting damages, the defendant(s) or Atlantic.

For these reasons, the court has taken into consideration the relevant Koshiba deposition testimony; the court agrees with Atlantic, however, that the Dixon, Lowery and Golucki depositions cited by the defendants have limited to relevance to any issue in this case.

**B. Rybaltowski's Status**

To determine whether Rybaltowski qualifies as a "contractor," the court begins with the language of the Policy: the term "contractor" includes any independent contractor or subcontractor of any insured; or any general contractor, developer, or property owner (or any independent contractor or subcontractor of these entities); "and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein." Atlantic argues vehemently that the term "contractor" is clearly defined by the Policy, but while the Policy describes a non-exhaustive list of the entities that qualify as "contractors," the Policy does not provide a true stand-alone definition of the word.

Under Illinois law, an insurance policy is analyzed using the same rules that apply to contract interpretation generally. *See Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003-04 (Ill. 2010). The policy is considered as a whole, and where language is unambiguous, the provisions are applied as written (unless to do so would be to contravene public policy). *Id.* If the language is ambiguous—that is, where the policy

language is susceptible to more than one reasonable interpretation—the term is construed liberally in favor of coverage. *Id.* The court should not "strain to find an ambiguity," but neither should it adopt an interpretation "which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Id.* (quoting *Canadian Radium & Uranium Corp. v. Indemnity Ins. Co. of N. Am.*, 104 N.E.2d 250 (Ill. 1952)).

Here, there is no dispute that Rybaltowski was working for Raincoat Solutions. Koshiba employed Rybaltowski and intended to pay Rybaltowski for his work at the Project that day. Nor is there any debate about the fact that at least Prince and Forest each qualify as a "contractor" under the Policy. The true crux of this debate is the relationship between Raincoat Solutions and Prince. The court agrees with the defendants that Raincoat Solutions was not, itself, an independent contractor or subcontractor at the time of the incident. The plain and ordinary meaning of the term "contractor" is one who has a contract to perform work for another. At the time of Rybaltowski's injury, there is no dispute that Raincoat Solutions and Prince had yet to reach an agreement regarding whether Raincoat Solutions would be retained to do work at the Project. Without an agreement, Raincoat Solutions does not qualify as a "contractor" under the plain meaning of that term.

In the court's view, the only open question is whether Raincoat Solutions was "working for and or providing services and or materials of any kind" to a contractor at the time of the injury. This question has to be answered in the affirmative. True, Raincoat Solutions did not expect to receive any payment for submitting its bid or doing the mockup jobs. Thus, Raincoat Solutions was not "working for" a contractor. But the entire

purpose of Raincoat Solutions' presence at the Project was to provide Prince with the opportunity to evaluate the caulking work to determine whether Raincoat Solutions would be awarded the contract. The language of the Exclusion is incredibly broad: "providing services and or materials of any kind." Raincoat Solutions' bid and mockup work fall within this expansive language. The court must conclude that Raincoat Solutions qualifies as a "contractor" as set out by the Policy, and that as a result Atlantic does not possess a duty to defend in the Rybaltowski Lawsuit.

The defendants argue that this construction renders the Policy's coverage illusory. If so, the Exclusion would contravene public policy, and the court should decline to adopt the construction based on the premise that the parties could not have intended such a result. *See Pekin Ins. Co.*, 930 N.E.2d at 1023; *St. Paul Fire & Marine Ins. Co. v. Antel Corp.*, 899 N.E.2d 1167, 1176 (Ill. App. Ct. 2008) ("In construing the policy at hand, we note that the parties' intent in the agreement could not have been to exclude coverage when the product was put to its intended purpose, thereby making coverage illusory."). But the coverage is not illusory here: the intent of the Exclusion was to carve out bodily injury to those persons actually working at the Project. An evaluation of the Policy as a whole establishes that Atlantic still had a duty to defend if any non-contractor suffered a bodily injury at the Project. "The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 841 N.E.2d 78, 86 (Ill. App. Ct. 2005).

In sum, because the coverage is not illusory, and because Raincoat Solutions is included in the Policy's use of the term "contractor," Atlantic does not have a duty to defend in the Rybaltowski Lawsuit.

## IV. CONCLUSION

For the reasons set forth above, the court denies the defendants' motion and grants Atlantic's motion.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 24, 2012